UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DAVID MAGGARD, JUNE MAGGARD, and BONITA HESS on their own behalf and on behalf of all other similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | 14 C 2368 |
| CCC INFORMATION SERVICES INC. d/b/a CCC VALUESOURCE and CCC VALUESCOPE, | ) ) ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

This matter comes before the Court on the motion of Defendant CCC Information Services Inc.'s ("CCC") to compel the appraisal of the vehicle of Plaintiffs David and June Maggard (collectively the "Maggards") and stay the action. For the following reasons, the motion to compel the appraisal and stay the action is granted.

## BACKGROUND

The Maggards held an automobile insurance policy (the "Policy") issued by The Hartford ("The Hartford"), an insurance company. In July 2013, the Maggards, both residents of West Virginia, were involved in a car accident that resulted in The Hartford finding that their vehicle was a "total loss." The Maggards submitted a claim for their vehicle to The Hartford and CCC provided a valuation report for the

vehicle. The Maggards accepted payment from The Hartford for their vehicle in July of 2013.

The Policy contains a section entitled "Part D -Coverage For Damage To Your Auto." It states:

A. The Appraisal Provision is replaced by the following:

**APPRAISAL**
1. If we and you do not agree on the amount of loss, either may demand, in writing, an appraisal of the loss. In this event, each party will select a competent and impartial appraiser and notify the other party of the selected appraiser within twenty days of such demand. The two appraisers will select an umpire. If the appraisers cannot agree upon an umpire within fifteen days, either party may request the selection of an umpire [sic] made by a judge of a court having jurisdiction. The appraisers will state separately the actual cash value and the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to in writing by any two will be binding.

> Each party will:
> a. Pay its chosen appraiser; and
> b. Bear the expenses of the appraisal and umpire equally.

2. We do not waive any of our rights under this policy by agreeing to an appraisal.

On April 2, 2014, the Maggards, individually and on behalf of a putative class of similarly situated plaintiffs, filed suit against CCC, alleging that the appraisal process CCC utilizes purposefully manipulates the value of a vehicle to come in below the actual fair market value of the car. This underassessment of the fair market value of a vehicle allows insurance companies that are responsible for the payment of claims to pay substantial less than is due to their customers. The Maggards allege that they were insured with The Hartford and, stemming from that relationship, they had

their vehicle valued by CCC. The Maggards claim that they no longer possess the vehicle. On July 8, 2014, The Hartford made a written request to the Maggards, asking that they participate in the appraisal process.

On April 2, 2014, the Maggards filed a six-count complaint, on behalf of themselves and a putative class, alleging that CCC: (1) violated the Illinois Consumer Fraud and Deceptive Practices Act ("ICFA"); (2) engaged in negligent misrepresentation; (3) engaged in fraudulent misrepresentation and/or fraudulent concealment; (4) was in breach of contract; (5) breached the duty of good faith and fair dealings; and (6) became unjustly enriched.

## DISCUSSION

The applicable section of the Federal Arbitration Act ("FAA") specifically provides that a court with jurisdiction "may direct that arbitration be held in accordance with the agreement at any place therein provided for, whether that place is within or without the United States. The FAA further provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3 ("Section 3"). Section 3 of the FAA provides that proceedings must be stayed, and arbitration be compelled, if an issue is arbitrable by the agreement of the parties. 9 U.S.C. §§ 3–4. We will use "appraisal" and "arbitration" interchangeably.

*See CenTrust Bank, N.A. v. Montpelier U.S. Ins. Co.*, 12 C 9233, 2013 WL 1855838, at *2 (N.D. Ill. May 1, 2013) ("Illinois courts have held that "an appraisal clause is analogous to an arbitration clause and is enforceable in a court of law in the same manner as an arbitration clause.").

A party seeking to compel arbitration "need only show: (1) an agreement to arbitrate, (2) a dispute within the scope of the arbitration agreement, and (3) a refusal by the opposing party to proceed to arbitration." *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 466 F.3d 577, 580 (7th Cir. 2006). The question of whether or not the parties agreed to arbitrate an issue requires "federal courts apply state-law principles of contract formation." *Gore v. Alltel Communications, LLC*, 666 F.3d 1027, 1032 (7th Cir. 2012). "Once it is clear, however, that the parties have a contract that provides for arbitration of some issues between them, any doubt concerning the scope of the arbitration clause is resolved in favor of arbitration as a matter of federal law." *Id.* The Maggards do not contest that the first and third elements of this test are met, and the Court finds that they have been sufficiently established. *See Zurich*, 466 F.3d at 580 (to compel arbitration, the movant must demonstrate that the dispute is within the scope of the arbitration clause and that the other party refused to arbitrate) (citation omitted). The issue is the scope of the appraisal clause and whether the theory of equitable estoppel permits a non-signatory to the Policy, like CCC, to enforce it.

The Maggards entered into the Policy with The Hartford. CCC was not involved whatsoever as a signatory. However, the mere fact of a party not being a

signatory to an agreement does not defeat the right to compel arbitration. *Wachovia Bank, N.A. Ass'n v. Schmidt*, 445 F.3d 762, 769 (4th Cir. 2006); *see also Hoffman v. Deloitte & Touche, LLP*, 143 F. Supp. 2d 995, 1004 (N.D. Ill. 2001). There are five doctrines through which a non-signatory can be bound by arbitration agreements entered into by others, including estoppel . *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 687 (7th Cir. 2005). Equitable estoppel allows a non-signatory to compel arbitration and an agreement containing an arbitration clause covers non-signatories under common-law contract and agency principles. *Hoffman*, 143 F. Supp. 2d at 1004. Estoppel may apply when the signatory "[m]ust rely on the terms of the written agreement in asserting its claim against a non-signatory. Thus, when each of a signatory's claims against a nonsignatory 'makes reference to' or 'presumes the existence of the written agreement, the signatory's claims arise out of and relate directly to the written agreement and arbitration is appropriate." *Id*. at 1004-1005 (citations omitted).

The parties quarrel over which state's law applies to the equitable estoppel analysis. CCC argues that West Virginia law applies and insists that state law should govern the issue of equitable estoppel and the ability of the third parties to compel appraisal "*unless* application of state-law rules would stand as an obstacle to the accomplishment of the FAA's objectives." *In re Apple iPhone Antitrust Litig.*, 874 F. Supp. 2d 889, 896 n. 14 (N.D. Cal. 2012) (emphasis in original). CCC also highlights the repeated references to West Virginia law in the Policy itself. The Maggards

request that the Court use decisions from Illinois courts, which the Maggards find have "rejected the expanded equitable estoppel doctrine from federal courts that allows a non-signatory to compel arbitration of claims that rely upon a contract containing the arbitration clause." *See Ervin v. Nokia, Inc.*, 349 Ill. App. 3d 508, 516 (2004) ("We decline "to follow federal decisions that adopt this expanded interpretation of equitable estoppel.").

For choice of law issues involving insurance contracts, "the Court considers the contacts that are most significant to [the contract], including the location of the subject matter, the place of delivery of the contract, the domicile of the insured or of the insurer, the place of the last act to give rise to a valid contract, the place of performance, or other place bearing a rational relationship to the general contract." *Perma-Pipe v. Liberty Surplus*, 2014 WL 1600570, at *3 (N.D. Ill. Apr. 21, 2014). The Maggards do not provide a choice-of-law analysis for why Illinois law applies, but CCC does and it vehemently argues[1] that West Virginia law prevails.

In the instant matter, the Maggards are domiciled in West Virginia, they allegedly executed the Policy with The Hartford in West Virginia, and the location of the vehicle is unknown. The presence of CCC, which is incorporated in Illinois, is not enough to establish that Illinois has the most significant contacts. Based on the facts provided, the Court concludes that West Virginia law applies as to the issue of

---

[1] Both parties' incessant footnotes throughout the briefs are not appreciated by the Court.

equitable estoppel. However, the Court must still determine if the appraisal clause should be enforced in this particular lawsuit.

CCC contends that the language in the insurance policy requires the Maggards to submit to an appraisal because it is clear that the valuation of the Maggards' vehicle falls squarely within the appraisal clause in the Policy. Also, CCC submits that individual issues may be subject to appraisal even if the entire case or dispute is not arbitrable. In its reply, the Court holds CCC true to its word that: (i) it is "simply requesting that the Maggards be compelled to participate in the appraisal process to which they previously agreed so that the actual cash value of their vehicle can be determined; (ii) CCC has not asked this Court to dismiss the complaint due to the presence of an appraisal clause; and (iii) CCC has not asked that the appraisers be allowed to decide class certification or interpret the contract between CCC and The Hartford.

The Maggards respond, stating that CCC has not shown any reasonable reliance to satisfy the theory of equitable estoppel. The Maggards argue that this is much more than a simple disagreement over the actual value of the vehicle, especially because a putative class is involved. Thus, they aver that these issues cannot be resolved through the appraisal process.

In West Virginia:

> equitable estoppel allows a nonsignatory to compel arbitration [] when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the nonsignatory[.]

*Blevins v. Flagstar*, 2013 WL 3365252, at *14 (N.D. W. Va. July 3, 2013). There are two circumstances when equitable estoppel allows a nonsignatory to compel arbitration: (1) "when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the nonsignatory" and (2) "when the signatory raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." *Brantley v. Republic Mortg. Ins. Co.*, 424 F.3d 392, 395–96 (4th Cir. 2005) (internal quotations and citation omitted).

When reviewing the Maggards' claims, it is evident that the existence of their claims depends on the Policy. CCC is correct that the reliance on the Policy is reflected in the more than a dozen times that the Maggards reference the Policy in their complaint. For instance, their claim for breach of the duty of good faith and fair dealings in the performance of CCC's appraisal services flows directly out of the Policy because without the Policy, CCC would have never provided an alleged under-valuation of the Maggards' vehicle to The Hartford. Additionally, their breach of contract claim is predicated on the theory that The Hartford's contract with CCC is paid for "through insurance premiums" outlined in the Policy. If it was not for the existence of the Policy, the negligent and fraudulent misrepresentations and the violation of the ICFA would not exist. The manner in which CCC allegedly "falsely misrepresented material facts" to the Maggards, as stated in their complaint, was through the implementation of the Policy itself. These claims directly rely upon the

Maggards' relationship with The Hartford and the subsequent agency relationship that The Hartford shared with CCC when they entered a contract to provide valuation reports for The Hartford's insured. Therefore, the Court finds that the Maggards' claims against the non-signatory, CCC, directly hinge on the Policy.

Indeed, the Maggards' complaint presents much more than a disagreement between them and the Hartford concerning actual cash value of their vehicle, however each of the Maggards' causes of action stems from the Policy itself. The Court finds that the second element necessary to compel the appraisal, a dispute within the scope of the appraisal clause, is satisfied. We conclude that the issues raised in the complaint are subject to the appraisal clause based on the intertwined nature of the Maggards' claims against CCC with the Policy.

## CONCLUSION

For the aforementioned reasons, the Court grants the motion to compel the appraisal and stay the action.

_____
Charles P. Kocoras
United States District Judge

Dated: 3/10/2015